# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

---

Christopher Rosmond, et al.,        Civil File No. 12-CV-02000 (DSD/JSM)

        Plaintiffs,

v.

Minneapolis Pipe Fitters Joint Apprenticeship
Training Committee (JATC) and Pipe Fitters
Local Union 539,

        Defendants.

---

Pipe Fitters Local Union 539,

        Third-Party Plaintiff,

v.

Minnesota Mechanical Contractors
Association, Inc.,

        Third-Party Defendant.

---

**AND**

Paul K. Lamuren,        Civil File No. 12- CV-2205(DWF/JJG)

        Plaintiff,

v.

Minneapolis Pipe Fitters Joint
Apprenticeship Training Committee, et al.

        Defendants.

---

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR SERVICE AWARDS AND PAYMENTS AND FEES AND COSTS**

## INTRODUCTION

In connection with the parties' Joint Motion for Final Settlement Approval, Plaintiffs respectfully move for an award of service awards and payments for certain Class Members' participation in the litigation.  Class Counsel, the law firm of Nichols Kaster, PLLP ("Plaintiffs' Counsel"), also respectfully moves this Court for an award of attorneys' fees and reimbursement of out-of-pocket costs for prosecution of this litigation and settlement administration.  The specific amounts requested are as follows:

1. $10,000 to the Class Representatives—Christopher Rosmond, Jan Michael Vaughn, Abdifatah Keynan, Alexander Krivetz, Curtis Montgomery, Umberto Rivera and Paul Lamuren—each as a Named Plaintiff service payment;

2. $18,000 to Lamuren for serving as the original filer of the charge of discrimination asserted in the Litigation;

3. $1,000 each to Seventeen (17) individuals—Lamuren, Alexander Krivetz, Jan-Michael Vaughn, Abdifatah Keynan, Christopher Rosmond, Abdulla Reed, Terrance Mann, Umberto Rivera, Curtis Montgomery, Raymond McDonald, Dwnell Langon, Clarence Hanson, Sammy Sarzoza, Murray Bogan, Tou Xiong, Qin Zheng, and Mubarak Mohamed—who participated in the Plaintiffs' pre-suit investigation;

4. $1,000 each to the four (4) Class Representatives—Lamuren, Alexander Krivetz, Jan-Michael Vaughn, Abdifatah Keynan—who attended the mediation;

5. $283,333.33 to Nichols Kaster, PLLP, as reimbursement for attorney fees and ongoing monitoring;

6. $5,000.00 to Nichols Kaster, PLLP to reimburse Plaintiffs' Counsel for litigation costs incurred; and

7. $10,000.00 to Nichols Kaster, PLLP for settlement administration.

The above-referenced Class Members' actions in bringing this lawsuit and/or assisting Plaintiffs' Counsel in prosecuting and settling the same have substantially

2

benefited the members of the settlement class.  Additionally, Plaintiffs' Counsel's efforts to date have been without compensation of any kind, and their fee has been wholly contingent upon the result achieved.  For these reasons and those discussed below, Plaintiffs' Counsel and Plaintiffs respectfully submit that the incentive awards, attorneys' fees and costs reimbursement sought are fair and reasonable under the applicable legal standards, and, in light of the contingency risk undertaken and the result achieved, should be awarded.

## ARGUMENT

### A.    THE SPECIFIED CLASS MEMBERS SHOULD RECEIVE SERVICE AWARDS AND PAYMENTS.

As this District has noted, "[s]mall incentive awards, which serve as premiums to any claims-based recovery from the settlement, promote the public policy of encouraging individuals to undertake the responsibility of representative lawsuits."  Yarrington v. Solvay Pharmaceuticals, Inc., 697 F. Supp. 2d 1057, 1068 (D. Minn. 2010) (internal citations omitted) (awarding $5,000 incentive payment to each named plaintiff). Furthermore, as your Honor has noted, incentive awards may be appropriate where, as here, the individuals "stepped forward and actually participated in the litigation…believed that participating as a plaintiff might pose a risk to their careers… helped to obtain enormous benefits inuring to all Class Members…" White v. Nat'l Football League, 822 F. Supp. 1389, 1423 (D. Minn. 1993) aff'd, 41 F.3d 402 (8th Cir. 1994), abrogated by Amchem Products, Inc. v. Windsor, 521 U.S. 591, 117 S. Ct. 2231, 138 L. Ed. 2d 689 (1997); see e.g., Austin et al v. Metro. Council, No. 0:11-cv-03621,

Order Granting Final Sett. App., ECF No. 27 at pp. 28-29 (D. Minn. March 27, 2012) (approving $20,000 incentive award to each of three named plaintiffs in an employment race discrimination case) (citing Wright v. Stern, 553 F. Supp. 28 2d 337, 342 (S.D.N.Y. 2008) (approving $50,000 awards to each of 11 named plaintiffs in employment discrimination action); Roberts v. Texaco, Inc., 979 F. Supp. 185, 200 (S.D.N.Y. 1997) (approving $50,000 and $85,000 to two named plaintiffs in race discrimination employment class)); Zilhaver v. UnitedHealth Grp., Inc., 646 F. Supp. 2d 1075, 1085 (D. Minn. 2009) (incentive awards of $15,000 per named plaintiff was appropriate); In re Xcel Energy, Inc., Sec., Derivative & "ERISA" Litig., 364 F. Supp. 2d 980, 1000 (D. Minn. 2005) (awarding $100,000 collectively to the eight-person lead plaintiff group).

Here, under the terms of the parties' settlement agreement, in addition to the amounts the Participating Class Members (other than Lamuren)[1] would be provided pursuant to the settlement formula allocation, Plaintiffs were permitted to petition for service awards and payments in recognition of certain Class Members' participation in the litigation in the amounts specified in the settlement agreement. (Settlement Agreement at ¶ 4, ECF No. 26-1.)  Neither the settlement Class Members, who were informed of the service awards and payments through the Court-approved Notice, nor Defendants object to these awards.  (Settlement Agreement at ¶ 4(b) and Ex. A ¶¶ 6, 13,

---

[1] The parties also negotiated $120,000.00 to Lamuren, in exchange for a full release of claims against Defendants to resolve the individual (non-Class) claims asserted in the Lamuren Action.  (ECF No. 26-1 at ¶ 4(a)(iii).)

ECF No. 26-1; Declaration of Megan I. Brennan ("Brennan Decl.")[2] at ¶ 24.)

Most importantly, these individuals have conferred a substantial benefit on the settlement class. The Named-Plaintiff service payments are provided for the time, effort and expense that they incurred in their willingness to step forward to bring this case on behalf of the class, and their efforts in assisting with the litigation, including the preparation and review of the Complaint. (Smith Decl. at ¶ 14, ECF No. 26.) The seventeen individuals who participated in the Plaintiffs' pre-suit investigation, participated in investigative interviews and many provided documentation relevant to the claims and wage and benefits loss. (Id. at ¶ 8.) Additionally, the four Named Plaintiffs attended the mediation, which lasted for 13 hours. (Id. at ¶ 16.) This service payment is provided for the time, effort and expense that they incurred in securing the settlement in this action.

Furthermore, Lamuren's efforts in filing the original charge of discrimination and providing information to the EEOC during its four-and-a-half year investigation led to the filing of Commissioners' Charges and probable cause findings on behalf of the class. Lamuren navigated this process *pro se* from April 5, 2005, through the issuance of the Right to Sue Letters on June 13, 2012. (Id. at ¶ 15.)

Due to the Named Plaintiffs' efforts and assistance in settling this matter, as well as the relatively minimal amount being requested as awards, the requested service awards and payments for certain Class Members' participation in the litigation are reasonable

---

[2] Submitted in connection with the Joint Memorandum in Support of the Parties' Motion for Final Settlement Approval filed contemporaneously with this Memorandum.

and justified.

**B.    PLAINTIFFS' COUNSEL'S REQUESTED ATTORNEYS' FEES ARE FAIR AND REASONABLE AND SHOULD BE AWARDED.**

Here, the parties' settlement, preliminarily approved by the Court, provides for Plaintiffs' Counsel to petition the Court for $283,333.33 as an award of attorneys' fees and states that Defendants will not oppose the request.  (Settlement Agreement at ¶ 8, ECF No. 26-1.)  In addition, the Court-approved Notice that was sent to Class Members stated that Plaintiffs' Counsel could seek an award of $283,333.33 to be paid from the settlement fund.  (Settlement Agreement at Ex. A ¶ 13, ECF No. 26-1.)  As such, pursuant to the parties' agreement and the terms of the class notice, Plaintiffs' Counsel are requesting an award of $283,333.33—or one-third (33.33% percent) of the $850,000 gross settlement.  This percentage is well within the range of reasonableness and should be approved.

"The award of attorney's fees in a class action settlement is committed to the discretion of the district court."  Carlson v. C.H. Robinson Worldwide, Inc., No. CIV 02-3780 JNE/JJG, 2006 WL 2671105 at *7 (D. Minn. Sept. 2006) (citing Petrovic v. Amoco Oil Co., 200 F.3d 1140, 1157 (8th Cir. 1999)).  Courts typically calculate fees by one of two methods: (1) the lodestar method (i.e., multiplying the hours reasonably expended by a reasonable hourly rate and adjusting by a multiplier); or (2) awarding fees as a percentage of the total settlement amount.  Carlson, 2006 WL 2671105 at *7 (citing cases).  Here, Plaintiffs' Counsel request that the commonly-used and "well-established" percentage-of-the-fund method be applied.  See Yarrington, 697 F. Supp. 2d at 1061

(citing cases).

This District has used several factors to guide inquiries into the reasonableness of requested fees: "(1) the benefit conferred on the class, (2) the risk to which plaintiffs' counsel was exposed, (3) the difficulty and novelty of the legal and factual issues of the case, (4) the skill of the lawyers, both plaintiffs' and defendants', (5) the time and labor involved, (6) the reaction of the class, and (7) the comparison between the requested attorney fee percentage and percentages awarded in similar cases." Yarrington, 697 F. Supp. 2d at 1062. Analysis of these factors supports the requested award.

### 1. Plaintiffs' Counsel have Conferred a Substantial Benefit on the Class.

Plaintiffs' Counsel's work on this case has resulted in a settlement of $850,000. (See Settlement Agreement at ¶ 3(a-b), ECF No. 26-1.)  Importantly, the settlement achieves significant equitable victories for the Class Representatives and the Class Members, including eliminating the use of cognitive ability/basic skills tests, offering structured interviews to all applicants meeting the minimum requirements of its apprenticeship training programs, participating Class Members getting a rank-order preference on the applicant ranking list over other equally-qualified applicants, requiring efforts to meet certain minority recruitment goals, mandating compliance with record-keeping obligations, and monitoring over the next two years.  (Settlement Agreement at ¶ 2, ECF No. 26-1.)  Such relief is valuable to current and future applicants because it provides continuing benefits to Class Members during the full term of the settlement agreement.  See Huguley v. General Motors Corp., 128 F.R.D. 81, 85, 87 (E.D. Mich.

7

1989) (describing significant benefits of injunctive relief provisions, such as a monitoring program for current and future employees included within the settlement agreement). Moreover, assuming the settlement is approved (including applicable service awards and payments) Participating Class Members will each receive between $3,829.87 and $18,702.28, as well as Lamuren, who will receive $150,000.00.  (Ex. 1.)  This result is particularly good given Defendants' financial situation and insurance limits.  (Mem. for Prelim. Settlement Approval, ECF No. 25.)   Defendants would not have paid those settlement allocations without this litigation and subsequent settlement overseen and facilitated by Plaintiffs' Counsel.  Plaintiffs' Counsel's efforts, thus, weigh in favor of granting of the request for fees.

**2.     Plaintiffs' Counsel Undertook Considerable Risk in Litigating this Case.**

Plaintiffs' Counsel took this case on a contingency fee basis, risking the possibility that they would recover nothing for their time and resources spent litigating the case. (Brennan Decl. at ¶ 25.)  At the time the Complaint was filed, there was no guarantee that settlement would be reached or that the outcome of litigation would be successful.  (Id. at ¶ 26.)   Plaintiffs' Counsel assumed considerable risk, especially in light of the fact it knew that the case would require it to pursue costly discovery, in particular regarding expert witnesses (including, but not limited to, statistical experts, Industrial Psychology/standardized testing experts, and economic damages experts).  (Id. at ¶ 27.) To this point, the EEOC and other firms declined to pursue this case.  (Id. at ¶ 28.)  This is notable and weighs in favor of the requested award.  See In re Xcel Energy, Inc.,

Securities, Derivative & "ERISA" Litigation, 364 F. Supp. 2d 980, 994 (D. Minn. 2005)

("Courts have recognized that the risk of receiving little or no recovery is a major factor

in awarding attorney fees.").

   **3.**  **This Case Involves Difficult and Novel Legal and Factual Issues.**

   Plaintiffs considered the difficulty in meeting each of the substantive hurdles

under Title VII and Section 1981 for each individual plaintiff to be able to establish a

protected right, as well as the difficulties of accomplishing this for a class.  Moreover, the

unique procedural posture of this case, involving Commissioners' Charges, leads to

potential challenges in terms of scope of the class and claims, failure to exhaust

administrative remedies, and statute of limitations issues.  (Mem. for Prelim. Settlement

Approval at pp. 6-8, ECF No. 25 (listing Defendants' affirmative defenses).)  If a trial on

the merits were held, Plaintiffs would have been required to pursue further costly

discovery, in particular regarding expert witnesses.  Thus, although Plaintiffs believe in

the strength of their claims there is uncertainty and risk involved in the issues that would

be before this Court on certification and summary judgment.

   Furthermore, the Parties hotly contest the potential damages available to the Class

Representatives and their ability to prove the Class Members are entitled to those

damages.  Even assuming the parties worked off of the same dataset, it is still open to

different interpretations.   Most significantly, as a practical matter, even absent

discrimination, not all of the Class Representatives and Class Members could have

feasibly been accepted into the program, given that the number of spots each year is

limited. Specifically, between 2004 and 2009, the JATC received 1,108 applications, but was only able to accept 187 applicants to its apprentice training programs. (Aff. of Roger Garner at ¶ 3, ECF No. 29.)

Settlement at this juncture avoids the possibility of such protracted litigation and secures monetary recovery for the class now.

### 4. Counsel for Both Parties are Skilled Wage and Hour Class Action Litigators.

The skill and experience of both parties' Counsel also supports the requested award. Plaintiffs' Counsel previously submitted a declaration detailing the notable class action experience of the Nichols Kaster law firm and of lead counsel. (Smith Decl. at ¶ 18-26, ECF No. 26.) Plaintiffs' Counsel's extensive experience was particularly essential in reaching the settlement in light of the experience and skill of Defense Counsel. (See Defense Counsels' professional biographies, available online at: http://www.cummins-law.com/people/brendan-d-cummins/; http://www.meagher.com/blindeman/; and http://www.meagher.com/jchinander/ (detailing the extensive employment law practice experience of Defense Counsel), last accessed 10/11/13.) These facts weigh in favor of awarding the requested fees.

### 5. Plaintiffs' Counsel Diligently and Effectively Litigated this Case and Will Have Ongoing Monitoring Obligations.

Over the last year since this case was filed, Plaintiffs' Counsel and their support staff have, together, spent approximately 679.1 hours investigating and litigating this case. (Brennan Decl. at ¶ 29.) Specifically, Plaintiffs' Counsel and their support staff

have, among other things, (1) initially investigated potential claims in this case, including obtaining and reviewing the EEOC's extensive file (of over 3500 pages) spanning a 4-year investigation; (2) drafted the Complaint; (3) met with the Named Plaintiffs and other Class Members in person or by phone numerous times; (4) met and conferred with Defendants and attended two Rule 16 conferences; (5) obtained client documents, including tax returns and mitigation information; (6) participated in an informal exchange of discovery with Defendants; (7) performed detailed damage calculations; (8) prepared for and attended a mediation; (9) negotiated the terms of the settlement; and (10) fielded legal questions from Class Members regarding settlement.   (Id. at ¶ 30.)   Plaintiffs' Counsel's work on this case to date has resulted in fees of approximately $232,100.00.[3] (Id. at ¶ 31.)

Furthermore, Plaintiffs' counsel will have ongoing monitoring responsibility over the next two years, which will entail additional time and effort.  (Settlement Agreement at ¶ 2(e), (g), (h), ECF No. 26-1.)

This successful result, combined with the actual fees discussed above, and the continuing monitoring responsibilities overwhelmingly support the requested fee award of $283,333.33.

**6.      There is No Opposition to the Requested Fee Award.**

Class Members have been informed, through the Court-approved notice, that Plaintiffs' Counsel may request fees in the amount of $283,333.33, and no Class Member

---

[3] Counsel are happy to provide itemized time and fee records at the Court's request, as well as itemized records on the costs discussed below.

has submitted an objection to the same.  (Brennan Decl. at ¶ 32; Settlement Agreement at

Ex. A ¶ 13, ECF No. 26-1.)     Similarly, Defendants do not oppose the requested fee

amount.  (Settlement Agreement at ¶ 8, ECF No. 26-1.)  Thus, this factor, too, weighs in

favor of granting Plaintiffs' Counsel's request.

**7.     The Requested Fees are Comparable to Fees Awarded in Similar Cases.**

As your Honor has noted, "[C]ourts in this circuit and in this district have

frequently awarded attorney fees between twenty-five and thirty-six percent of a common

fund in other class actions."  In re Xcel Energy, Inc., Sec., Derivative & "ERISA" Litig.,

364 F. Supp. 2d 980, 998 (D. Minn. 2005) (ERISA matter); see e.g., Holden v.

Burlington N., Inc., 665 F. Supp. 1398, 1404 (D. Minn. 1987) (awarding attorney's fees

amounting to about 32 percent of total monetary benefits in sex discrimination case);

E.E.O.C. v. Fairbault Foods, Inc., No. 07-3976, 2008 WL 879999, at *4 (D. Minn. Mar.

28, 2008) (approving class counsel's request for fees in an amount representing 30

percent of settlement funds case alleging race and national origin discrimination); Harris

v. Republic Airlines, Inc., 1991 WL 238992, at *2 (D. Minn. Nov.12, 1991) (awarding

fees of 32 percent of the common fund); see also In re U.S. Bancorp Litig., 291 F.3d

1035, 1038 n. 6 (8th Cir.2002) (upholding award of attorneys' fees amounting to 36% of

settlement fund of $3.5 million and citing cases with similar awards).  Here, Plaintiffs'

Counsel's requested award in this action falls directly in line with fees awarded in similar

cases.   For this reason, the Court should approve Plaintiffs' Counsel's requested

attorneys' fees award in the amount of $283,333.33.

C.   **PLAINTIFFS' COUNSEL'S OUT-OF-POCKET EXPENSES ARE MODEST AND SHOULD BE REIMBURSED.**

Plaintiffs' Counsel is requesting the Court approve reimbursement in the amount of $5,000.00 for litigation costs incurred.  The costs for which Plaintiffs' Counsel are seeking reimbursement for include the cost of mediation, record retrieval costs, travel and parking reimbursement, access to electronic court records, filing fees, photocopies, postage, electronic research and courier fees.  (Brennan Decl. at ¶ 33.)  These costs total $5,489.88.  (Id. at ¶ 34.)  Notably, no Class Member has objected; neither have Defendants.  (Id. at ¶ 35; Settlement Agreement at Ex. A ¶ 13, ECF No. 26-1.)

In light of the facts that the amounts requested here are less than the amount actually incurred by Plaintiffs' Counsel, there have been no objections to the possibility of awarding this amount to Counsel, and this District has approved reimbursement of similar costs, the reimbursement requested here should be granted.  See In re Xcel Energy, 364 F. Supp. 2d at 999-1000 (reimbursing "expenses of photocopying, postage, messenger services, document depository, telephone and facsimile charges, filing and witness fees, computer-assisted legal research, expert fees and consultants, and meal, hotel, and transportation charges for out-of-town travel").

D.   **PLAINTIFFS' COUNSEL SHOULD BE REIMBURSED FOR SETTLEMENT ADMINISTRATION.**

Additionally, Plaintiffs' Counsel and their support staff have, together, spent 60.1 hours facilitating and administering settlement of this case. (Brennan Decl. at ¶ 36.)[4]

---

[4] In its Order granting preliminary settlement approval, the Court appointed Class

Specifically, Plaintiffs' Counsel and their support staff have, among other things: (1) prepared and mailed settlement notices; (2) called and emailed individuals to verify the received the notice; (3) collected claim forms; (4) fielded questions from Class Members regarding settlement, including working with Class Members to remedy deficient claim forms; and (5) searched for Class Members' contact information and re-mailed notices. (Id. at ¶ 38.)  Plaintiffs' Counsel's work on settlement administration to date has resulted in fees of $10,637.50. (Id. at ¶ 39.)

Plaintiffs' Counsel also incurred $288.04 in costs attributable to the costs of preparing, mailing, and re-mailing settlement notices.[5]  (Id. at ¶ 40.)

These efforts and costs resulted in a total of $10,925.54 for settlement administration.  (Id. at ¶ 42.)  This is more than the requested $10,000.

Class Members have been informed, through the Court-approved notice, that Plaintiffs' Counsel may request up to $10,000 for settlement administration, and no Class Member has submitted an objection to the same.  (Id. at ¶ 43; Settlement Agreement at Ex. A ¶ 13, ECF No. 26-1.)  Similarly, Defendants do not oppose the requested amount for settlement administration.  (Settlement Agreement at ¶ 8, ECF No. 26-1.)

---

Counsel settlement administrator in this case.  (ECF No. 35 at ¶ 3.)   Certain staff members at Nichols Kaster, PLLP (specifically a paralegal and a class action clerk) were predominantly responsible for settlement administration.  (Brennan Decl. at ¶ 37.)

[5] The amount requested does not include the costs Counsel will incur in the final phase of settlement administration, should the Court grant final approval of the settlement.  These costs will almost certainly include printing and mailing of checks, as well as any required re-issuing and re-mailing of checks due to Class Members' address changes **and will remain unreimbursed**.  (Id. at ¶ 41.)

## CONCLUSION

Based on the foregoing, Plaintiffs and their Counsel respectfully request that the Court approve the requested fees, costs, and service awards and payments for certain Class Members.[6]

Dated: October 16, 2013

s/Megan I. Brennan
Steven Andrew Smith (#260836)
Megan I. Brennan (#386550)
Nichols Kaster, PLLP
80 South Eighth Street
4600 IDS Center
Minneapolis, MN 55402-2242
Telephone:  (612) 256-3200

*Attorneys for Plaintiffs*

---

[6] The proposed order submitted with the Parties' Joint Motion for Final Settlement Approval incorporates the requested fees, costs, and service awards and payments for certain Class Members.

15